## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

ROBERT FIREMAN and ANN RAIDER,

    Plaintiffs,

v.

NEWS AMERICA MARKETING IN-STORE, INC.,

    Defendant.

Civil Action No.

05-11740 MLW

MAGISTRATE JUDGE Alexander

RECEIPT # 66448
AMOUNT $250
SUMMONS ISSUED N/A
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY CLK
DATE 8/23/05

### NOTICE OF REMOVAL

Defendant News America Marketing In-Store, Inc. (hereinafter "News America") files this Notice of Removal of the civil action filed against it by plaintiffs Robert Fireman and Ann Raider to the United States District Court for the District of Massachusetts, pursuant to the provisions of 28 U.S.C. §§ 1441, 1446, and 1332, on the basis of the following facts that show this case is properly removable:

    1.    Plaintiffs filed a complaint against defendant in Suffolk County Superior Court on August 8, 2005. The case is styled *Robert Fireman and Ann Raider v. News America Marketing In-Store, Inc.,* Suffolk (Massachusetts) Superior Court, Civil Action No. 05-3378. (A true copy of the Complaint is attached hereto as Exhibit A.)

    2.    The time within which defendant is required by the laws of the United States, 28 U.S.C. § 1446(b), to file this Notice of Removal has not yet expired.

    3.    Plaintiff Robert Fireman is an individual residing at 241 Perkins Street, #D-104, Jamaica Plain, Massachusetts. (See Complaint, Ex. A hereto).

    4.    Plaintiff Ann Raider is an individual residing at 46 Ivy Road, Wellesley, Massachusetts. (See Complaint, Ex. A hereto).

# 3154232_v1

5. Defendant News America is incorporated under the laws of the State of Delaware and its principal place of business in New York, New York.

6. This action is a civil action which may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C. § 1441 in that it is a civil action between citizens of different states with an amount in controversy exceeding $75,000, exclusive of interest and costs. Specifically, the plaintiff seeks declaratory relief and damages as a result of defendant's alleged breach of contract and violation of Mass. Gen. Laws c. 93A, §11, in an amount in excess of five million dollars ($5,000,000).

7. Venue is proper pursuant to 28 U.S.C. §1442(a), because this court is the United States District Court for the district and division embracing the place wherein the state court action is pending.

8. Pursuant to 28 U.S.C. §1446(d), a copy of this Notice of Removal is being filed with the Civil Division of the Suffolk County Superior Court.

9. Pursuant to Local Rule 81.1(a), certified or attested copies of all records, proceedings and docket entries in the Suffolk Superior Court action shall be filed with this Court within thirty (30) days.

NEWS AMERICA MARKETING IN-STORE, INC.

By its attorneys,

Gordon P. Katz (BBO# 261080)
Tara J. Myslinski (BBO #644936)
HOLLAND & KNIGHT LLP
10 St. James Avenue
Boston, MA 02116
(617) 523-2700

Dated:   August 22, 2005
         Boston, Massachusetts

# 3154232_v1                               2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was furnished by first class mail, postage pre-paid, to Kevin T. Peters, Todd & Weld LLP, 28 State Street, 31st Floor, Boston, Massachusetts 02109, counsel for plaintiffs this 23rd day of August, 2005.

_____
Gordon P. Katz

*1*

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

SUFFOLK, SS.                                SUPERIOR COURT DEPT.
                                            CIVIL ACTION NO. _____

ROBERT FIREMAN and ANN RAIDER  )            05-3378
                               )
    Plaintiffs,                )
                               )
v.                             )
                               )
NEWS AMERICA MARKETING         )
IN-STORE, INC.                 )
                               )
    Defendant.                 )

## COMPLAINT AND JURY DEMAND

Robert Fireman and Ann Raider, by and through their attorneys, bring this action against News America Marketing In-Store, Inc. for breach of the covenant of good faith and fair dealing and violation of Massachusetts General Laws, Chapter 93A, §11. Plaintiffs also seek a declaration of rights under Mass. Gen. L. ch. 231A, § 1 *et. seq.* For their complaint, plaintiffs state as follows:

### PARTIES

1)   Plaintiff Robert Fireman ("Fireman") is a resident of the Commonwealth of Massachusetts, and resides at 241 Perkins Street, #D-104, Jamaica Plain, Massachusetts.

2)   Plaintiff Ann Raider ("Raider") is a resident of the Commonwealth of Massachusetts, and resides at 46 Ivy Road, Wellesley, Massachusetts.

3)   On information and belief, defendant News America Marketing In-Store, Inc. ("NAM") is a corporation duly organized under the laws of the State of Delaware,

and is a wholly owned subsidiary of News Corporation. On information and belief, NAM maintains a principle place of business at 1211 Avenue of the Americas, New York, New York. NAM's agent within the Commonwealth of Massachusetts for service of process is Corporation Service Company, 84 State Street, Boston, Massachusetts 02109.

## FACTS COMMON TO ALL COUNTS

4) Raider and Fireman founded Consumer Card Marketing, Inc. ("CCMI") in 1991. CCMI developed and implemented the concept of building consumer loyalty programs primarily for supermarket, drug, and specialty retail chain stores. In basic terms, CCMI built customer databases by providing chain-store customers with personal identification cards and key tags. Through CCMI's proprietary software tools and experience, retailers were able to track actual individual customer purchase behavior, identify their best customers for the first time, and develop targeted one-to-one marketing programs and reward programs for themselves or in concert with consumer package-goods manufacturers.

5) From 1991 to 1999, CCMI grew to be an industry leader with a national reputation for excellence in the development and implementation of loyalty marketing programs. By 1999, CCMI's gross sales approached $8 million.

6) With the proven success of its concept and the widespread acceptance of retailers to institute loyalty marketing programs, CCMI began to access to the customer purchase behavior. CCMI now needed to have a sales force that could solicit consumer package manufacturers to participate in CCMI's retailer-supported direct marketing programs. To grow this business, CCMI had to choose between raising investment

capital to build its own sales force or, alternatively, aligning with a larger company that had an existing sales force and existing relationships with the manufacturers. As the importance of time to market increased, Fireman and Raider explored both investment capital and strategic alliances.

7) In early 1999, NAM approached Raider and Fireman to discuss a business relationship with CCMI. CCMI wanted a business relationship with a highly visible, national company that was prepared to provide financial and other support sufficient to allow Fireman and Raider to pursue CCMI's business plan. Several companies approached Raider and Fireman about such an alliance and discussed multi-million dollar offers. NAM, a subsidiary of media giant News Corporation, seemed an excellent candidate. The parties began to discuss the terms of a strategic alliance. Fireman and Raider disclosed CCMI's business plan to NAM, and NAM ultimately agreed to support it. Given the commitments NAM was prepared to make to CCMI, it became clear to Fireman and Raider that NAM and CCMI should align.

8) Among other commitments, NAM agreed that it would:

- provide CCMI the immediate use of its experienced sales force with established relationship already generating hundreds of millions of dollars in sales;

- provide CCMI's management with capital to acquire and expand software, enlarge CCMI's staff, and fund operational support consistent with CCMI's business plan; and

- endeavor to expand CCMI's business to other markets and industries through NAM's relationships with worldwide affiliates of News Corporation, Fox,

Twentieth Century Fox, Fox Sports Net, the NFL, and Major League Baseball, among others.

9) NAM also represented that CCMI would continue to operate as an autonomous division, and allow Fireman and Raider to continue to manage the business from the Boston area. Both Fireman and Raider believed that this structure was crucial to the success of the proposed alliance, and their decision to go forward was induced in material part by NAM's representations. Fireman was to serve as General Manager of the division, and Raider was to act as Senior Vice President of Sales and Marketing

10) Both before and after the closing, Raider and Fireman listed CCMI's key short-term requirements for CCMI to make its $8.2 million benchmark sales from August 1999 to October 2000. NAM committed to meet those requirements.

11) On August 13, 1999, NAM, Fireman and Raider signed a Stock Purchase Agreement ("Agreement") pursuant to which Fireman and Raider sold all of their stock in CCMI to NAM. The terms of the sale were $2.8 million cash and an earn-out over five years. The earn-out component of the purchase price was in two parts, both based on the company's (CCMI's or its successors') Gross Margin as defined in the Agreement.

12) The first component, the "Base Earn-Out Amount," was to be paid annually over five years, and was calculated as a percentage of the Company's Gross Margin (16.8%, 14.5%, 13.75%, 13.3%, and 12.9% respectively). NAM derived these percentages from a pro forma it developed which forecasted a minimum of fifteen million dollars in "Earn-Out" compensation over the 5 year term.

4

13) NAM structured the second component, the so-called "First-Year Bonus Amount" and "Second-Year Bonus Amount," to be paid when the Company met certain financial benchmarks. Raider and Fireman were to be paid $2.5 million if the Gross Margin for the first year of operations exceeded $3.1 million, and another $2.5 million if the Gross Margin for the second year of operations exceeded $6 million. NAM developed this formula to accommodate Fireman and Raider's requirement of no less than $8 million for the sale of CCMI. Inasmuch as CCMI's gross margin exceeded $3.1 million in the year prior to the acquisition, if Fireman and Raider merely continued to run CCMI as they had in the past, the $2.5 million First-Year Bonus Amount was virtually guaranteed. With the promised support, the Second-Year Bonus Amount was also virtually guaranteed. As discussed below, however, not only did NAM refuse the promised support, it dismantled CCMI and made it impossible to meet the bonus targets.

14) Indeed, according to NAM's own financial documents, the total projected price for Fireman and Raider's CCMI stock was over $15 million. Given NAM's commitment to dedicate the resources necessary to grow CCMI's business, and commitment to allow Fireman and Raider to continue to manage the business, all of this money would be paid.

15) Almost immediately after the closing, it became evident that NAM did not intend to abide by its representations. By November 1999, NAM had accomplished none of the key requirements CCMI and NAM had collectively agreed upon prior to the closing. To the contrary, in addition to other problems:

   i. NAM withheld the resources it promised that were essential to maintain and grow CCMI's business. NAM did not fund the expansion of CCMI's business, withheld the support of its sales force, did not facilitate the creation of any long-term relationship with retailers and manufacturers,

and delayed investing in the software and hardware needed to expand CCMI's business. When NAM finally purchased software, it overpaid, charged CCMI (which materially impacted the earn out), used the software to support other computer system requirements within NAM, and refused input from Fireman and Raider. Furthermore, new products that were key to CCMI's business plan that NAM had agreed to pursue were never developed, and NAM forbid Fireman and Raider to work on them.

ii. Instead of building on CCMI as an independent unit (consistent with the commitments that induced Fireman and Raider to sell CCMI), without any input from or notice to Fireman and Raider NAM divided and assimilated CCMI's technology, personnel, resources, and know-how into its other businesses. CCMI's key personnel were relocated or fired.

iii. NAM marginalized Raider and Fireman's role in CCMI's operations, and undermined their authority to manage and run CCMI's business. For instance, it refused to include Raider and Fireman's input in many major decisions relative to CCMI's business. Raider and Fireman had no involvement in the approval of budgets or projections for CCMI or any of CCMI's successors. NAM unilaterally changed the budget, and made it inadequate to fund the agreed upon business plan.

iv. Despite NAM's pre-closing representations, it ignored Fireman and Raider's efforts to be included in the strategy sessions to define and establish the growth of their business.

v. Despite the fact that CCMI spent years developing good will associated with its name, NAM changed CCMI's name to SmartSource Direct, and then to the SmartSource iGroup, all within a short period, and all without Raider's and Fireman's consent. Fireman and Raider were ostracized to the point that they only learned about the formation of the iGroup when it was announced to the public.

16) As a result of NAM's actions and refusal to abide by the commitments that led Raider and Fireman to sell CCMI to NAM, CCMI and its successor the SmartSource iGroup did not met the $3.1 million Gross Margin benchmark, and Fireman and Raider were not paid the $5 million in Bonuses, i.e., the balance of the purchase price.

17) NAM also miscalculated the Gross Margin and bonus for the first period of operations, and refused to rectify all of its errors. Therefore, Raider and Fireman did

not receive the appropriate First-Year Bonus Amount even if one were incorrectly to assume that NAM abided by its commitments.

## COUNT I
### (Breach of Contract)

18)   Fireman and Raider incorporate all of the allegations of this Complaint by reference herein.

19)   Raider and Fireman agreed to defer a substantial portion of the consideration for their shares of CCMI, and accepted payment in the form of earn-outs.

20)   The Agreement plainly, specifically, contemplates that NAM will pay for the stock it acquired from Fireman and Raider pursuant to provisions in their Agreement that define the obligation to pay earn-out moneys to Raider and Fireman.

21)   Fireman and Raider have complied with their obligations under the Agreement.

22)   NAM violated the covenant of good faith and fair dealing implicit in the Agreement by making it impossible for Fireman and Raider to achieve a Gross Margin sufficient to be paid what they were and are entitled to for the sale of their stock.

23)   Raider and Fireman were damaged by NAM's breach of contract.

## COUNT II
### (Violation of Massachusetts General Laws, Chapter 93A, §11)

24)   Fireman and Raider incorporate all of the allegations of this Complaint by reference herein.

25)   At all times relevant to this complaint, Fireman, Raider, and NAM were engaged in trade or commerce.

26) The acts outlined in this complaint constitute unfair and deceptive acts and practices that violate Mass. Gen. L. ch. 93A.

27) The conduct violative of Mass. Gen. L. ch. 93A occurred primarily and substantially within the Commonwealth of Massachusetts.

28) Fireman and Raider have suffered a loss of money and property as a consequence of NAM's violations of Mass. Gen. L. ch. 93A.

## COUNT III
### (Request for Declaratory Judgment)

29) Raider and Fireman incorporate all of the allegations of this Complaint by reference herein.

30) Under the Agreement, Fireman and Raider are to receive earn-out payments based on the Gross Margin of CCMI "or any successor (by law or otherwise)" during the five-year earn-out period.

31) An actual controversy has arisen as to which company's Gross Margin Fireman and Raider's earn-out payments must be measured against. CCMI's business was been assimilated into other News America business groups including, but not limited to, the SmartSource iGroup.

32) Pursuant to Mass. Gen. L. ch. 231A, § 1 et. seq., Raider and Fireman request a declaratory judgment determining that other News America business units, including the iGroup are "successors," and that the revenues generated by them must be included in the calculation of the Gross Margin that determines the amounts due to Fireman and Raider under the Agreement.

WHEREFORE, Ann Raider and Robert Fireman respectfully request that this Court:

1) Enter judgment in their favor on counts I and II of the complaint, and award damages in an amount to be proven at trial;

2) Award triple damages under count II of the complaint;

3) Declare their rights under count III of the complaint;

4) Award them their costs and attorneys' fees; and

5) Allow them such other and further relief as the Court deems just and appropriate.

**FIREMAN AND RAIDER DEMAND A TRIAL BY JURY ON ALL COUNTS OF THE COMPLAINT SO TRIABLE.**

ANN RAIDER and
ROBERT FIREMAN,

By their attorneys,

Kevin T. Peters (BBO #550522)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

DATED: August 8, 2005

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Robert Fireman and Ann Raider

## DEFENDANTS
News America Marketing In-Store, Inc.

(b) County of Residence of First Listed Plaintiff: **Suffolk, MA**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: **New York, NY**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)
Kevin T. Peters, Esq.   (617) 720-2626
Todd & Weld LLP
28 State Street, Boston, MA 02109

Attorneys (If Known)
Gordon P. Katz, Esq.  (617) 523-2700
Tara J. Myslinski, Esq.
Holland & Knight LLP
10 St. James Ave, Boston, MA 02116

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|   | PTF | DEF |   | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** — **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** — **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations / ☐ 530 General |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition |  |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): **28 USC 1332**
Brief description of cause: **dispute regarding compensation of founders of acquired company**

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ **> $5,000,000**
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE: 8/23/05
SIGNATURE OF ATTORNEY OF RECORD: /s/ Gordon P. Katz

**FOR OFFICE USE ONLY**
RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only)  **Robert Fireman v. News America Marketing In-Store, Inc.**

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   - [ ] I. 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.
   - [ ] II. 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.    *Also complete AO 120 or AO 121 for patent, trademark or copyright cases
   - [x] III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.
   - [ ] IV. 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.
   - [ ] V. 150, 152, 153.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.
   **N/A**

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?
   YES [ ]  NO [xx]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)
   YES [ ]  NO [xx]
   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
   YES [ ]  NO [ ]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
   YES [ ]  NO [xx]

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).
   YES [xx]  NO [ ]

   A. If yes, in which division do all of the non-governmental parties reside?
      Eastern Division [xx]    Central Division [ ]    Western Division [ ]

   B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?
      Eastern Division [ ]    Central Division [ ]    Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)
   YES [ ]  NO [xx]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME    Gordon P. Katz
ADDRESS    Holland & Knight LLP, 10 St. James Avenue, Boston, MA 02116
TELEPHONE NO.    617-523-2700

(CategoryForm.wpd - 5/2/05)