# Holland+Knight

Tel  617 523 2700
Fax 617 523 6850

Holland & Knight LLP
10 St. James Avenue
Boston, MA 02116
www.hklaw.com

August 30, 2005

**TARA J. MYSLINSKI**
617-854-1450
tara.myslinski@hklaw.com

**By Hand Delivery**
Civil Clerk's Office
United States District Court
Eastern District of Massachusetts
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA  02210

Re:   Fireman v. News America Marketing In-Store, Inc.,
      Civil Action No. 05-11740MLW

Dear Sir/Madam:

Enclosed for filing please find certified copies from the Suffolk Superior Court with regard to the above matter.

Kindly date stamp the copy provided herewith and return to the waiting paralegal. Thank you for your assistance in this matter.

Very truly yours,

HOLLAND & KNIGHT LLP

Tara J. Myslinski/adm

Tara J. Myslinski

TJM/adm
Enclosures
# 3186513_v1

Suffolk Superior Civil # 05-3378

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

05-11740 MLW

ROBERT FIREMAN and ANN RAIDER,

Plaintiffs,

v.

NEWS AMERICA MARKETING IN-STORE, INC.,

Defendant.

Civil Action No.

## NOTICE OF REMOVAL

Defendant News America Marketing In-Store, Inc. (hereinafter "News America") files this Notice of Removal of the civil action filed against it by plaintiffs Robert Fireman and Ann Raider to the United States District Court for the District of Massachusetts, pursuant to the provisions of 28 U.S.C. §§ 1441, 1446, and 1332, on the basis of the following facts that show this case is properly removable:

1.  Plaintiffs filed a complaint against defendant in Suffolk County Superior Court on August 8, 2005. The case is styled *Robert Fireman and Ann Raider v. News America Marketing In-Store, Inc.*, Suffolk (Massachusetts) Superior Court, Civil Action No. 05-3378. (A true copy of the Complaint is attached hereto as Exhibit A.)

2.  The time within which defendant is required by the laws of the United States, 28 U.S.C. § 1446(b), to file this Notice of Removal has not yet expired.

3.  Plaintiff Robert Fireman is an individual residing at 241 Perkins Street, #D-104, Jamaica Plain, Massachusetts. (See Complaint, Ex. A hereto).

4.  Plaintiff Ann Raider is an individual residing at 46 Ivy Road, Wellesley, Massachusetts. (See Complaint, Ex. A hereto).

#3154232_v1

Commonwealth of Massachusetts
SUFFOLK SUPERIOR COURT
Case Summary
Civil Docket

## SUCV2005-03378
### Fireman et al v News America Marketing in-Store Inc

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 08/08/2005 | **Status** | Needs review for service (acneserv) | | |
| **Status Date** | 08/08/2005 | **Session** | H - Civil H, 3 Pemberton Square, Boston | | |
| **Origin** | 1 | **Case Type** | A99 - Misc contract | | |
| **Lead Case** | | **Track** | F | | |
| **Service** | 11/06/2005 | **Answer** | 01/05/2006 | **Rule12/19/20** | 01/05/2006 |
| **Rule 15** | 01/05/2006 | **Discovery** | 06/04/2006 | **Rule 56** | 07/04/2006 |
| **Final PTC** | 08/03/2006 | **Disposition** | 10/02/2006 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Robert Fireman
Active 08/08/2005

**Private Counsel 550522**
Kevin T Peters
Todd & Weld
28 State Street
31st Floor
Boston, MA 02109
Phone: 617-720-2626
Fax: 617-227-5777
Active 08/08/2005 Notify

**Plaintiff**
Ann Raider
Active 08/08/2005

**Defendant**
News America Marketing in-Store Inc
Served: 08/11/2005
Served (answr pending) 08/16/2005

**Private Counsel 261080**
Gordon P Katz
Holland & Knight
10 Saint James Avenue
11th Floor
Boston, MA 02116
Phone: 617-523-2700
Fax: 617-523-6850
Active 08/26/2005 Notify

**Private Counsel 644936**
Tara Myslinski
Holland & Knight
10 St James Avenue
11th floor
Boston, MA 02116
Phone: 617-523-2700
Fax: 617-523-6850
Active 08/26/2005 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 08/08/2005 | 1.0 | Complaint filed with request for trial by jury all counts |
| 08/08/2005 | | Origin 1, Type A99, Track F. |

case01 250706 y y y y y
Page 1 of 2

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
Case Summary
Civil Docket

## SUCV2005-03378
### Fireman et al v News America Marketing in-Store Inc

| Date | Paper | Text |
|---|---|---|
| 08/08/2005 | 2.0 | Civil action cover sheet filed |
| 08/08/2005 | 3.0 | Motion of plff for appointment of Robert Messina as special process server, filed & allowed (Sikora,J) |
| 08/16/2005 | 4.0 | SERVICE RETURNED: News America Marketing in-Store Inc(Defendant) in hand to Ms. Susan Paxton |
| 08/26/2005 | | Certified copy of petition for removal to U. S. Dist. Court of Deft.New America Marketing In-Store, Inc. U. S. Dist.#(05-11740MLW). |

EVENTS

I HEREBY ATTEST AND CERTIFY ON
AUGUST 29, 2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
ASSISTANT CLERK.

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

SUFFOLK, SS.                                          SUPERIOR COURT DEPT.
                                                      CIVIL ACTION NO.

ROBERT FIREMAN and ANN RAIDER  )        05-3378
                               )
    Plaintiffs,                )
                               )
    v.                         )
                               )
NEWS AMERICA MARKETING         )
IN-STORE, INC.                 )
                               )
    Defendant.                 )

COMPLAINT AND JURY DEMAND

Robert Fireman and Ann Raider, by and through their attorneys, bring this action against News America Marketing In-Store, Inc. for breach of the covenant of good faith and fair dealing and violation of Massachusetts General Laws, Chapter 93A, §11. Plaintiffs also seek a declaration of rights under Mass. Gen. L. ch. 231A, § 1 *et. seq.* For their complaint, plaintiffs state as follows:

PARTIES

1)   Plaintiff Robert Fireman ("Fireman") is a resident of the Commonwealth of Massachusetts, and resides at 241 Perkins Street, #D-104, Jamaica Plain, Massachusetts.

2)   Plaintiff Ann Raider ("Raider") is a resident of the Commonwealth of Massachusetts, and resides at 46 Ivy Road, Wellesley, Massachusetts.

3)   On information and belief, defendant News America Marketing In-Store, Inc. ("NAM") is a corporation duly organized under the laws of the State of Delaware,

and is a wholly owned subsidiary of News Corporation. On information and belief, NAM maintains a principle place of business at 1211 Avenue of the Americas, New York, New York. NAM's agent within the Commonwealth of Massachusetts for service of process is Corporation Service Company, 84 State Street, Boston, Massachusetts 02109.

## FACTS COMMON TO ALL COUNTS

4)   Raider and Fireman founded Consumer Card Marketing, Inc. ("CCMI") in 1991. CCMI developed and implemented the concept of building consumer loyalty programs primarily for supermarket, drug, and specialty retail chain stores. In basic terms, CCMI built customer databases by providing chain-store customers with personal identification cards and key tags. Through CCMI's proprietary software tools and experience, retailers were able to track actual individual customer purchase behavior, identify their best customers for the first time, and develop targeted one-to-one marketing programs and reward programs for themselves or in concert with consumer package-goods manufacturers.

5)   From 1991 to 1999, CCMI grew to be an industry leader with a national reputation for excellence in the development and implementation of loyalty marketing programs. By 1999, CCMI's gross sales approached $8 million.

6)   With the proven success of its concept and the widespread acceptance of retailers to institute loyalty marketing programs, CCMI began to access to the customer purchase behavior. CCMI now needed to have a sales force that could solicit consumer package manufacturers to participate in CCMI's retailer-supported direct marketing programs. To grow this business, CCMI had to choose between raising investment

capital to build its own sales force or, alternatively, aligning with a larger company that had an existing sales force and existing relationships with the manufacturers. As the importance of time to market increased, Fireman and Raider explored both investment capital and strategic alliances.

7) In early 1999, NAM approached Raider and Fireman to discuss a business relationship with CCMI. CCMI wanted a business relationship with a highly visible, national company that was prepared to provide financial and other support sufficient to allow Fireman and Raider to pursue CCMI's business plan. Several companies approached Raider and Fireman about such an alliance and discussed multi-million dollar offers. NAM, a subsidiary of media giant News Corporation, seemed an excellent candidate. The parties began to discuss the terms of a strategic alliance. Fireman and Raider disclosed CCMI's business plan to NAM, and NAM ultimately agreed to support it. Given the commitments NAM was prepared to make to CCMI, it became clear to Fireman and Raider that NAM and CCMI should align.

8) Among other commitments, NAM agreed that it would:

- provide CCMI the immediate use of its experienced sales force with established relationship already generating hundreds of millions of dollars in sales;

- provide CCMI's management with capital to acquire and expand software, enlarge CCMI's staff, and fund operational support consistent with CCMI's business plan; and

- endeavor to expand CCMI's business to other markets and industries through NAM's relationships with worldwide affiliates of News Corporation, Fox,

Twentieth Century Fox, Fox Sports Net, the NFL, and Major League Baseball, among others.

9) NAM also represented that CCMI would continue to operate as an autonomous division, and allow Fireman and Raider to continue to manage the business from the Boston area. Both Fireman and Raider believed that this structure was crucial to the success of the proposed alliance, and their decision to go forward was induced in material part by NAM's representations. Fireman was to serve as General Manager of the division, and Raider was to act as Senior Vice President of Sales and Marketing

10) Both before and after the closing, Raider and Fireman listed CCMI's key short-term requirements for CCMI to make its $8.2 million benchmark sales from August 1999 to October 2000. NAM committed to meet those requirements.

11) On August 13, 1999, NAM, Fireman and Raider signed a Stock Purchase Agreement ("Agreement") pursuant to which Fireman and Raider sold all of their stock in CCMI to NAM. The terms of the sale were $2.8 million cash and an earn-out over five years. The earn-out component of the purchase price was in two parts, both based on the company's (CCMI's or its successors') Gross Margin as defined in the Agreement.

12) The first component, the "Base Earn-Out Amount," was to be paid annually over five years, and was calculated as a percentage of the Company's Gross Margin (16.8%, 14.5%, 13.75%, 13.3%, and 12.9% respectively). NAM derived these percentages from a pro forma it developed which forecasted a minimum of fifteen million dollars in "Earn-Out" compensation over the 5 year term.

4

13) NAM structured the second component, the so-called "First-Year Bonus Amount" and "Second-Year Bonus Amount," to be paid when the Company met certain financial benchmarks. Raider and Fireman were to be paid $2.5 million if the Gross Margin for the first year of operations exceeded $3.1 million, and another $2.5 million if the Gross Margin for the second year of operations exceeded $6 million. NAM developed this formula to accommodate Fireman and Raider's requirement of no less than $8 million for the sale of CCMI. Inasmuch as CCMI's gross margin exceeded $3.1 million in the year prior to the acquisition, if Fireman and Raider merely continued to run CCMI as they had in the past, the $2.5 million First-Year Bonus Amount was virtually guaranteed. With the promised support, the Second-Year Bonus Amount was also virtually guaranteed. As discussed below, however, not only did NAM refuse the promised support, it dismantled CCMI and made it impossible to meet the bonus targets.

14) Indeed, according to NAM's own financial documents, the total projected price for Fireman and Raider's CCMI stock was over $15 million. Given NAM's commitment to dedicate the resources necessary to grow CCMI's business, and commitment to allow Fireman and Raider to continue to manage the business, all of this money would be paid.

15) Almost immediately after the closing, it became evident that NAM did not intend to abide by its representations. By November 1999, NAM had accomplished none of the key requirements CCMI and NAM had collectively agreed upon prior to the closing. To the contrary, in addition to other problems:

    i. NAM withheld the resources it promised that were essential to maintain and grow CCMI's business. NAM did not fund the expansion of CCMI's business, withheld the support of its sales force, did not facilitate the creation of any long-term relationship with retailers and manufacturers,

and delayed investing in the software and hardware needed to expand CCMI's business. When NAM finally purchased software, it overpaid, charged CCMI (which materially impacted the earn out), used the software to support other computer system requirements within NAM, and refused input from Fireman and Raider. Furthermore, new products that were key to CCMI's business plan that NAM had agreed to pursue were never developed, and NAM forbid Fireman and Raider to work on them.

ii. Instead of building on CCMI as an independent unit (consistent with the commitments that induced Fireman and Raider to sell CCMI), without any input from or notice to Fireman and Raider NAM divided and assimilated CCMI's technology, personnel, resources, and know-how into its other businesses. CCMI's key personnel were relocated or fired.

iii. NAM marginalized Raider and Fireman's role in CCMI's operations, and undermined their authority to manage and run CCMI's business. For instance, it refused to include Raider and Fireman's input in many major decisions relative to CCMI's business. Raider and Fireman had no involvement in the approval of budgets or projections for CCMI or any of CCMI's successors. NAM unilaterally changed the budget, and made it inadequate to fund the agreed upon business plan.

iv. Despite NAM's pre-closing representations, it ignored Fireman and Raider's efforts to be included in the strategy sessions to define and establish the growth of their business.

v. Despite the fact that CCMI spent years developing good will associated with its name, NAM changed CCMI's name to SmartSource Direct, and then to the SmartSource iGroup, all within a short period, and all without Raider's and Fireman's consent. Fireman and Raider were ostracized to the point that they only learned about the formation of the iGroup when it was announced to the public.

16) As a result of NAM's actions and refusal to abide by the commitments that led Raider and Fireman to sell CCMI to NAM, CCMI and its successor the SmartSource iGroup did not met the $3.1 million Gross Margin benchmark, and Fireman and Raider were not paid the $5 million in Bonuses, i.e., the balance of the purchase price.

17) NAM also miscalculated the Gross Margin and bonus for the first period of operations, and refused to rectify all of its errors. Therefore, Raider and Fireman did

6

not receive the appropriate First-Year Bonus Amount even if one were incorrectly to assume that NAM abided by its commitments.

## COUNT I
### (Breach of Contract)

18) Fireman and Raider incorporate all of the allegations of this Complaint by reference herein.

19) Raider and Fireman agreed to defer a substantial portion of the consideration for their shares of CCMI, and accepted payment in the form of earn-outs.

20) The Agreement plainly, specifically, contemplates that NAM will pay for the stock it acquired from Fireman and Raider pursuant to provisions in their Agreement that define the obligation to pay earn-out moneys to Raider and Fireman.

21) Fireman and Raider have complied with their obligations under the Agreement.

22) NAM violated the covenant of good faith and fair dealing implicit in the Agreement by making it impossible for Fireman and Raider to achieve a Gross Margin sufficient to be paid what they were and are entitled to for the sale of their stock.

23) Raider and Fireman were damaged by NAM's breach of contract.

## COUNT II
### (Violation of Massachusetts General Laws, Chapter 93A, §11)

24) Fireman and Raider incorporate all of the allegations of this Complaint by reference herein.

25) At all times relevant to this complaint, Fireman, Raider, and NAM were engaged in trade or commerce.

26) The acts outlined in this complaint constitute unfair and deceptive acts and practices that violate Mass. Gen. L. ch. 93A.

27) The conduct violative of Mass. Gen. L. ch. 93A occurred primarily and substantially within the Commonwealth of Massachusetts.

28) Fireman and Raider have suffered a loss of money and property as a consequence of NAM's violations of Mass. Gen. L. ch. 93A.

COUNT III
(Request for Declaratory Judgment)

29) Raider and Fireman incorporate all of the allegations of this Complaint by reference herein.

30) Under the Agreement, Fireman and Raider are to receive earn-out payments based on the Gross Margin of CCMI "or any successor (by law or otherwise)" during the five-year earn-out period.

31) An actual controversy has arisen as to which company's Gross Margin Fireman and Raider's earn-out payments must be measured against. CCMI's business was been assimilated into other News America business groups including, but not limited to, the SmartSource iGroup.

32) Pursuant to Mass. Gen. L. ch. 231A, § 1 *et. seq.*, Raider and Fireman request a declaratory judgment determining that other News America business units, including the iGroup are "successors," and that the revenues generated by them must be included in the calculation of the Gross Margin that determines the amounts due to Fireman and Raider under the Agreement.

WHEREFORE, Ann Raider and Robert Fireman respectfully request that this Court:

1) Enter judgment in their favor on counts I and II of the complaint, and award damages in an amount to be proven at trial;

2) Award triple damages under count II of the complaint;

3) Declare their rights under count III of the complaint;

4) Award them their costs and attorneys' fees; and

5) Allow them such other and further relief as the Court deems just and appropriate.

**FIREMAN AND RAIDER DEMAND A TRIAL BY JURY ON ALL COUNTS OF THE COMPLAINT SO TRIABLE.**

ANN RAIDER and
ROBERT FIREMAN,

By their attorneys,

Kevin T. Peters (BBO #550522)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

DATED: August 8, 2005

I HEREBY ATTEST AND CERTIFY ON
AUGUST 29, 2005 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: [signature]

ASSISTANT CLERK.

9

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 05-3378 | Trial Court of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|
| PLAINTIFF(S) Robert Fireman and Ann Raider | | DEFENDANT(S) News America Marketing In-Store, Inc. |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Kevin T. Peters, Esq. TODD & WELD, LLP., 28 State St., 31st Fl. Boston, MA 02109 (617) 720-2626 | | ATTORNEY (if known) |

**Origin code and track designation**

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup. Ct. C. 231, s. 104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup. Ct. C. 231, s. 102C (X)
- [ ] 4. F04 District Court Appeal c. 231, s. 97 & 104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass. R. Civ. P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A99 | Good Faith and Fair Dealing | (F) | (X) Yes ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses
2. Total Doctor expenses
3. Total chiropractic expenses
4. Total physical therapy expenses
5. Total other expenses

Subtotal $

B. Documented lost wages and compensation to date $
C. Documented property damages to date $
D. Reasonably anticipated future medical and hospital expenses $
E. Reasonably anticipated lost wages $
F. Other documented items of damages (describe) $

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

TOTAL $

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):
Violation of, inter alia, the covenant of good faith and fair dealing in the purchase and operation of a business.

TOTAL $ +$ 5 Million

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT:

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of various methods."

Signature of Attorney of Record     DATE: 8/8/05

A.O.S.C. 1-2000     PSC (800) 518-8726 – c.g.f.

I HEREBY ATTEST AND CERTIFY ON AUGUST 29, 2005, THAT THE FOREGOING DOCUMENT IS A FULL, TRUE AND CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE, AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
ASSISTANT CLERK.

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

SUFFOLK, ss

SUPERIOR COURT DEPT.
CIVIL ACTION NO.

ROBERT FIREMAN and ANN RAIDER )
)
Plaintiffs )
)
v. )
)
NEWS AMERICA MARKETING )
IN-STORE, INC. )
)
Defendant )

05-3378A

Aug. 8, 2005
Filed + Allowed
By the Court Sikora, J.

### PLAINTIFFS, ROBERT FIREMAN and ANN RAIDER'S, MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER

Pursuant to Rule 4(c) of the Massachusetts Rules of Civil Procedure, the plaintiffs, Robert Fireman and Ann Raider move that the Court appoint Constable Robert Messina, a disinterested party and of legal age, as special process server for the purpose of serving of the Pleadings in this action.

I HEREBY ATTEST AND CERTIFY ON
AUGUST 29, 2005, THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY _____
ASSISTANT CLERK.

DATED: August 8, 2005

Respectfully submitted,
Plaintiffs, Ann Raider and
Robert Fireman

By their attorneys

_____
Kevin T. Peters (BBO# 550522)
TODD & WELD, LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

# Commonwealth of Massachusetts

4

SUFFOLK, ss.



SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

FILED

2005 AUG 29 - 33784

No. _____

U.S. DISTRICT COURT
DISTRICT OF MASS

Robert Fireman and Ann Raider
_____, Plaintiff(s)

v.

News America Marketing In-Store, Inc.
_____, Defendant(s)

## SUMMONS

To the above-named Defendant:

You are hereby summoned and required to serve upon  Kevin T. Peters, Esq.
TODD & WELD, LLP.  _____
plaintiff's attorney, whose address is  28 State Street, 31st Fl. Boston, MA 02109  in answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse io, Esquire, at Boston, the __8th_____ day of __August_____, in the year of our Lord two thousand __and five_____.

*Michael Joseph Donovan*
Clerk/Magistrate

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT   (2) MOTOR VEHICLE TORT   (3) CONTRACT   (4) EQUITABLE RELIEF   (5) OTHER

FORM CIV.P. 1 3rd Rev.

I HEREBY ATTEST AND CERTIFY ON
AUGUST 29, 2005 THAT THE
FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
ASSISTANT CLERK.