UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ROBERT FIREMAN and ANN RAIDER,<br><br>Plaintiffs,<br><br>v.<br><br>NEWS AMERICA MARKETING IN-STORE, INC.,<br><br>Defendant. | Civil Action No. 05-11740-MLW |

### DECLARATION OF HENRI LELLOUCHE

1. I am currently the Senior Vice President of the Smart Source iGroup, a division of News America Marketing, Inc. ("NAM").

2. I began supervising the plaintiffs, Robert Fireman ("Fireman") and Ann Raider ("Raider") several months after NAM's acquisition of Consumer Card Marketing, Inc. ("CCMI") in 1999. Although I continued to supervise Fireman through the majority of his contract with NAM, I did not supervise him through the expiration of his contract with NAM in 2004. I supervised Raider until the expiration of her contract with NAM in 2004.

3. Fireman and Raider worked in the Smart Source iGroup of NAM.

4. I make this declaration based on my personal knowledge and a review of NAM records. This declaration responds to assertions in the Plaintiffs' Motion to Compel.

### The Plaintiffs' Document Requests and NAM's Response

5. I have reviewed the Plaintiffs' First Set of Requests for Production of Documents and Things to Defendant (the "Requests for Production").

**CERTIFICATE OF SERVICE**

     I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this 4th day of June, 2007.

                                                  /s/ Gordon P. Katz
                                                  Gordon P. Katz

6. I was primarily responsible for supervising and undertaking NAM's tasks in responding to the Requests for Production.

7. I believe the documents, electronic files, emails, and other materials produced by NAM fully and fairly respond to the Plaintiffs' Requests for Production, as more fully set out below.

### Electronically Stored Information

8. I employ general rules in terms of retaining electronic documents and email. I employed these same rules during the time that I supervised Fireman and Raider.

9. As a rule, I retain electronic copies of all files and email that I view as important, and define "important" by whether I believe I will need to refer to the materials again. Accordingly, I retain materials I believe I will need to refer to again, after my initial reading or preparation of the email.

10. I do not delete, and I retain, all materials of this kind. Because I run the vast majority of my projects using digital files, and not paper files, I rely almost entirely on my electronic recordkeeping structures to fulfill my job duties, and run the projects for which I am responsible.

11. On a daily basis, I move email that is important from my Inbox and store these email in personal folders in Microsoft Outlook. I delete unimportant Inbox items so that my In-Box contains approximately 10 email at the end of the day. I structure my Sent Box similarly, but leave approximately one month of sent email in my Sent Box. I follow these rules to preserve important records, and to keep my mailbox under control.

### Search of Electronically Stored Information

12. Upon receipt, I reviewed the Plaintiffs' Requests for Production of Documents. Based on these Requests, I searched the hard drive of my work computer, and the network shared

2

drives to which I have access. I searched for all documents that referenced CCMI, Smart Source, Fireman, Raider, or other individuals that worked on CCMI-related projects.

13. With respect to my hard drive, I conducted these searches in all "live" directories, and in all archive directories. I conducted the search in all personal folders in Outlook as well. The searches, therefore, covered my entire hard drive. This hard drive contains all files, email, and other materials that I retained from the period 1999 through 2004.

14. I also conducted searches of those network shared drives to which I have access. I used the same search criteria to compile shared documents, in addition to those resident on my hard drive.

15. Finally, I went to NAM's Information Technology ("IT") Department, and requested, through Alfred McBean, searches of network shared drives that might be beyond my access privileges.

16. The IT Department, using these searches uncovered additional materials.

17. I compiled all of the materials collected through these searches – (i) the search of my hard drive, the search of network shared drives to which I had access, and (iii) the search of shared network drives generally – and produced these materials to counsel in digital form.

18. Subsequently, upon further review of the materials compiled, I determined that an additional set of searches to locate further meeting minutes was warranted. These searches uncovered additional minutes, which I again provided to counsel.

19. I believe that the electronic files, email, and paper files that NAM has produced fully and fairly respond to the Plaintiffs' Requests for Production.

### Backup Tapes

20. I am generally aware that NAM maintains tapes that "back-up" the NAM computer systems. I am also generally aware that information cannot be obtained from a backup

3

tape unless the tape is "restored," and that the backup tapes are not intended as an "archive" system. Such archiving is the responsibility of individual employees.

21.     I have never requested information from a backup tape. I am unaware of any employee that has requested information from a backup tape.

Signed under the penalties of perjury this ___4TH___ day of June, 2007.

_____
Henri Lellouche

# 4548141_v3

4