UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

ROBERT FIREMAN and ANN RAIDER, )
)
Plaintiffs, )
)
v. ) CIVIL ACTION NO. 05-11740MLW
)
NEWS AMERICA MARKETING IN-STORE, )
INC., )
)
Defendant. )

---

## ROBERT FIREMAN AND ANN RAIDER'S SURREPLY MEMORANDUM IN FURTHER OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### Introduction

Defendant News America Marketing In-Store ("NAM") attempts in its reply brief to explain away the overwhelming New York case law which unambiguously requires that when a contract confers decision making power on one party, the resulting discretion must be exercised in good faith. As NAM finally admits after failing to recognize such cases in its opening brief, New York courts have recognized that the covenant of good faith and fair dealing is implied in contracts which grant parties "the sole right, without interference" or "sole, exclusive, and complete discretion" to perform actions under a contract. NAM cannot reasonably argue that the "sole and unfettered discretion" language in § 6.8 is somehow distinguishable from the language above to which New York courts have applied a requirement to act in good faith. In addition, NAM's fallback attempt to rely on the alleged covenant not-to-sue completely ignores Plaintiffs undisputed contention that their claims rely on far more than § 6.8 and its attempt to add

more evidence through additional testimony and evidence has merely created more genuine issues of material fact which are suitable for determination by a jury, not as a matter of law.

I.  **NAM Cannot Distinguish The Unambiguous New York Case Law Which Requires A Party Acting Within Its Sole And Unfettered Discretion To Exercise That Discretion In Good Faith**

In its reply, NAM reiterates its argument from its motion that § 6.8 of the Stock Purchase Agreement completely absolves it from any duty to act in good faith, essentially sticking to its contention that NAM would have been completely within its rights to summarily shut down Plaintiffs' company, Consumer Card Marketing, Inc. ("CCMI") the day after it completed the stock purchase. This is contrary to New York law, and NAM's attempts to distinguish away the numerous cases cited by Plaintiff requiring NAM to act in good faith simply do not hold up to basic scrutiny.

NAM attempts to distinguish the unambiguous reasoning of deCiuitiis v. Nynex Corp, 1996 WL 512150 (S.D.N.Y. 1996) exemplifies its failed effort to ignore the clear law which required it to act in good faith in exercising its discretion. First, buried in a footnote, NAM unreasonably distinguishes between the "sole and unfettered discretion" language in § 6.8 of the Agreement and the "sole, exclusive, and complete" discretion granted to the defendant in Nynex Corp. Id. at *3. Without stating as such, NAM apparently contends that exclusive and complete discretion is somehow meaningfully different from unfettered discretion, a classic example of a distinction without a difference. NAM further attempts to distinguish Nynex Corp. on the ground that the New York courts were wary of letting the parties with discretion avoid paying for the benefits

2

they received. *See* Defendant's Reply Memorandum at 6-7. This reasoning appears nowhere within the Nynex Corp. court's decision, which unequivocally states that under New York law "an implied covenant of good faith does not conflict with [defendant]'s 'sole, exclusive and complete discretion.' Rather, it requires [defendant] to exercise its discretion in good faith." Id. at *3. NAM cannot use the 2.8 million dollar upfront payment it made to Plaintiffs for a company that NAM internally valued itself was worth well in excess of nine million in total cash payments (with a present value of over six million dollars) to distinguish the facts of this matter from those in Nynex Corp. and absolve itself of the clear and unambiguous requirement to act in good faith under New York law in exercising its discretion under the Agreement.

Similarly, NAM's attempts to distinguish Zilg v. Prentice-Hall, 515 F.Supp. 716 (S.D.N.Y.) and the numerous other cases cited by Plaintiffs are without merit. While focusing on Zilg and deCiutiis in its reply and incorrectly mischaracterizing Plaintiffs' opposition as "rely[ing] almost exclusively on the case of *Zilg*..." NAM virtually completely fails to address the express statements of New York law cited by Plaintiffs which thoroughly and completely demonstrate that New York law required NAM to act in good faith in exercising its discretion under §6.8. See Travellers Int'l A.G. v. Trans World Airlines, 41 F.3d 1570, 1575 (2d Cir. 1999); Carvel Corp. v. Diversified Management Group, Inc., 930 F.2d 228, 231 (2d Cir.1991); Cross & Cross Properties, Ltd. v. Everett Allied Co., 886 F.2d 497, 502 (2d Cir.1989); TIG Ins. Co. v. Newmont Mining Corp., 413 F. Supp. 2d 273, 281 (S.D.N.Y. 2005); Hirsch v. Food Resources, Inc., 24 A.D.3d 293, 296 (N.Y. App. Div. 2005). NAM attempts in a footnote to briefly explain away these cases but cannot and does not deny the plain fundamental concept

3

underlying these cases that "[e]ven when a contract confers decision-making power on a single party, the resulting discretion is nevertheless subject to an obligation that it be exercised in good faith." Travellers Int'l A.G. v. Trans World Airlines, 41 F.3d 1570, 1575 (2d Cir. 1999); citing Carvel Corp. v. Diversified Management Group, Inc., 930 F.2d 228, 231 (2d Cir.1991)).[1]

## II. NAM Wrongfully Limits Plaintiffs' Claims To Section 6.8 Of The Agreement

NAM completely ignores Plaintiffs' undisputed contention that their claims encompass more than merely §6.8 of the Agreement, including the fact that Plaintiffs claims clearly implicate §2.3, which contemplates that the purchase price "shall be increased" by certain percentages of the gross margin of CCMI after the purchase. The covenant of good faith and fair dealing requires parties to act in good faith in fulfilling their obligations under all portions of a contract, and here it is clear that the alleged genuine material facts in dispute create a dispute over whether or not NAM acted in good faith under §2.3 and whether NAM frustrated the basic purpose of the Agreement. Nowhere does the language NAM points to explicitly and unequivocally bar claims by the Plaintiffs regarding NAM's lack of good faith, and in no conceivable way does it prohibit claims regarding NAM's actions in frustrating Plaintiffs' ability to receive increases to the purchase price under §2.3. Under the "closest of judicial scrutiny", NAM's arguments that §6.8 completely absolves it of an obligation to act in good faith

---

[1] NAM's argument regarding the concerns of the Second Circuit over the trial court's decision after a bench trial in the Zilg case is misplaced. While the Second Circuit expressed concern over the reading into the contract in question of a "best efforts" clause, it did not refute the fact the defendant had a duty to act in good faith in its initial efforts to promote the book and act in good faith subsequently in advertising and printing the book. See Zilg v. Prentiss-Hall, Inc., 717 F.2d 671, 680-81 (2nd Cir. 1983). Similarly, Plaintiffs argue only that NAM was required to act in good faith in exercising its discretion.

must fail, as §6.8, without any mention of good faith cannot be read so broadly as to completely excuse them from acting in good faith in fulfilling their obligation under all of the terms of the Agreement. Golden Pacific Bancorp v. F.D.I.C., 273 F.3d 509, 515 (2d Cir. 2001).

### III. The Affidavit Submitted By Bill Adam And The Other Additional Testimony Cited By NAM Creates Additional Genuine Issues Of Material Fact

NAM's submission of additional affidavits and testimony in its reply merely evidences and highlights the genuine issues of material fact that abound in this case.[2] The Affidavit of Bill Adam, still currently an employee of NAM, creates a dispute as to the conditions of his leaving of CCMI and the work he subsequently did in Connecticut with NAM. See Affidavit of Bill Adam at ¶¶1-4. Plaintiffs have presented evidence refuting this account, and stating that NAM refused to give Mr. Adam a raise at his job in Boston and then subsequently offered him a $50,000 salary increase to move to Connecticut, where he subsequently focused the majority of his time on other NAM divisions. See Robert Fireman's Answers to First Set of Interrogatories Propounded by the Defendant ("Fireman's Answers to Interrogatories") at 11-12 (attached as Exhibit G to the Affidavit of Charles H. Roumeliotis ("Roumeliotis Aff.").[3] In addition, Plaintiffs have presented, as stated in detail in their opposition, numerous pieces of evidence and

---

[2] Plaintiffs submit to the Court that while the submission of a reply was allowed under the Court's October 5, 2007 ordered, no leave was granted for the submission of additional materials such as further affidavits. Local Rule 7.1(B)(1) states that "[a]ffidavits and other documents setting forth or evidencing facts on which the motion is based *shall* be filed with the motion" (emphasis added). All additional materials may only be submitted with leave of court. Local Rule 7.1(B)(3). As Defendant did not request leave to submit the additional affidavits, Plaintiffs respectfully submit that they should be disregarded by the Court.

[3] Plaintiffs also presented evidence which indicates that staff beyond Mr. Adam was also shifted to Connecticut to work on NAM's other businesses. Fireman's Answers to Interrogatories at 13 ("NAM...forced the move of several technical people to work on NAM's base business and not CCMI").

5

testimony representing NAM's lack of good faith in exercising its discretion. Plaintiffs presented ample evidence in its opposition that NAM failed to use its sales force, marginalized the expertise of Plaintiffs, and refused to let CCMI use trade shows and advertising to build the business.[4] See Robert Fireman and Ann Raider's Opposition To News America Marketing In-Store, Inc.'s Motion for Summary Judgment ("Opposition") at 5-11.

For this reason, NAM's continued reliance on <u>Keene Corp. v. Bogan</u>, 1990 WL 1864 (S.D.N.Y. 1989) is inapposite. Unlike in <u>Keene</u>, in this matter, there is no question that NAM could act both in its own interests and with a lack of good faith towards Plaintiffs. CCMI was just one division in NAM's large corporation, and the evidence here which creates material disputes as to among other things NAM's siphoning off of technical staff at CCMI's location, its purchase of technology for other NAM divisions for which CCMI bore the burden the cost, and its refusal to use NAM's main sales force to market CCMI's business, evidences how NAM did not act in good faith, in violation of the covenant of good faith and fair dealing that "is implied in every contract." <u>Carvel Corp.</u>, 930 F.2d at 231; Opposition at 5-11. Here this Court is not charged with "micro-analyzing" every action of NAM as NAM contends, rather it is charged with recognizing the numerous genuine issues of material fact which exist as to whether NAM acted in good faith as it was required to under New York law, a question which is properly left to

---

[4] A further example of NAM's reliance on facts in dispute lies in footnote 17 of its reply brief, where it contends that Plaintiffs are "playing fast and loose with the facts" with regard to NAM employee Christopher Mixson's expertise. NAM tellingly fails to mention that Citicorp's POS Information Services division closed in 1991, and thus Mr. Mixson had no additional experience or expertise in the developments in the loyalty marketing sphere from that point forward. Deposition of Christopher Mixson at 73 (Defendant's Exhibit Binder Tab E)

6

a jury in this case.

Respectfully submitted:

ANN RAIDER AND ROBERT FIREMAN

By their attorneys,

/s/ David H. Rich
Kevin T. Peters (BBO #550522)
David H. Rich (BBO #634275)
Charles H. Roumeliotis (BBO #657553)
Todd & Weld LLP
28 State Street
Boston, MA 02109

Dated: December 27, 2007         (617) 720-2626

CERTIFICATE OF SERVICE

I, David Rich, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

Date: December 27, 2007         /s/ David H. Rich
                                David H. Rich